# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re: Mobile Addiction, LLC,

Case No. 24-10002-11

Debtor.

_____

**United States Trustee's Motion to Dismiss or Convert**
_____

Under 11 U.S.C. § 1112(b), the United States Trustee moves the Court to dismiss or convert this chapter 11 case for cause. The Court faces this issue:

> Cause for dismissal or conversion includes substantial loss to or diminution of the estate with no reasonable likelihood of rehabilitation and failure to file reports. Here, the debtor meets both of those situations. Does cause exist?

The answer is yes. Mobile Addiction's losses are continuing and increasing. It has ceased operations, has no income, has increasing administrative costs, and has few assets—none with equity. It is also delinquent on its financial reporting. Cause exists, and dismissal would best serve the interests of creditors and the estate.

## Background

Debtor Mobile Addiction, LLC was a retailer of cell phones and pay-as-you-go airtime for VIP Wireless and Boost Mobile. It was previously

in chapter 11 and had a plan confirmed in 2020.[1] Mobile Addiction was unable to complete that plan, and on January 2, 2024, filed the chapter 11 bankruptcy petition in this case.[2]

During the initial-debtor interview, Mobile Addiction's principal indicated the company had largely survived because of government aid that was ending, and it did not see a profitable way forward. On January 18, Mobile Addiction filed two motions to sell assets free and clear of liens that proposed to sell all stores by private sales. On January 26, at the evidentiary hearing on Mobile Addiction's motions to sell all its stores, Mobile Addiction's principal disclosed that the company had shut down operations on January 10. On January 31, the Court granted motions to sell the stores, inventory, and most assets.

Mobile Addiction's schedules make clear that its only remaining assets—after the sales of all the stores—are possible tax credits, an insurance claim, a refund of statutory fees during its first bankruptcy case if the U.S. Supreme Court orders that, and chapter 5 avoidance actions. The tax credits are claimed by three entities, including

---

[1] Case No. 19-11449.
[2] Doc. #1.

partially by Mobile Addiction's bankruptcy counsel, and at least one secured creditor claims the insurance proceeds. At the § 341 meeting of creditors, Mobile Addiction's principal was unable to state if there are any avoidance actions to pursue. None have been filed.

Mobile Addiction has not filed any monthly operating reports during this case. Its reports for January and February are delinquent. Mobile Addiction had only $769.85 in the bank as of March 12, plus the $15,033 in its counsel's trust account.

Mobile Addiction has no income, and no equity in its few remaining assets. And there appear to be numerous administrative expense claim possibilities, including Mobile Addiction's bankruptcy counsel for attorney fees, sixty-nine former employees for unpaid wages for post-petition work, post-petition payroll taxes, unpaid post-petition rent, and statutory fees to the United States Trustee Program. And Mobile Addiction has filed an application to employ an accountant.[3]

On March 25, the Court denied Mobile Addiction's motion to allow monthly compensation to its counsel.[4] On March 27, Mobile Addiction

---

[3] Doc. #128.

[4] Doc. #150.

filed a premature application to pay attorney fees and costs.[5] That same day, Mobile Addiction's counsel filed a motion to withdraw.[6] In counsel's required letter to Mobile Addiction, he stated that prospect of payment of attorney fees and expenses "has changed drastically since the original decision was made to represent Mobile Addiction in a Chapter 11 bankruptcy and it does not look very promising that much more of HLF's outstanding fees will be paid" and went on to call the likelihood of the law firm being paid "extremely low."[7]

## Argument

**I. This case should be dismissed or converted for cause.**

Section 1112 of the Bankruptcy Code governs the conversion or dismissal of a chapter 11 case, and "is intended to preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation."[8] It

---

[5] Doc. #151.

[6] Doc. #153.

[7] Doc. #153-1 at 1.

[8] *Lynch v. Bernard*, 590 B.R. 30, 35 (E.D.N.Y. 2018) (citing *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (S.D.N.Y. 1995).

4

requires a court, upon a finding of cause, to convert a chapter 11 case to chapter 7 or dismiss the case.[9]

The Code lists several grounds for cause,[10] but those are illustrative rather than exhaustive.[11] A court may consider other grounds as they arise and may use its equitable powers to reach an appropriate result.[12] Indeed, while "cause" is not specifically defined anywhere in the Bankruptcy Code, courts have interpreted it flexibly to include "any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process."[13] Causes exists in this case for at least two separate and independent reasons, each of which is sufficient grounds for dismissal.

### A. Cause exists for continuing loss and diminution.

Under § 1112(b)(4)(A), a court must convert or dismiss a case when there is continuing loss to or diminution of the estate and an absence of

---

[9] 11 U.S.C. § 1112(b)(1).

[10] *Id.* § 1112(b)(4).

[11] *In re AdBrite Corp.*, 290 B.R. 209, 217 (Bankr. S.D.N.Y. 2003).

[12] *In re Neighbors*, No. 11-21003, 2015 Bankr. LEXIS 4308, at *21 (Bankr. D. Kan. Dec. 21, 2015).

[13] *In re Morris*, 155 B.R. 422, 426 (Bankr. W.D. Tex. 1993) (citing *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986).

5

Case 24-10002    Doc# 157    Filed 04/02/24    Page 5 of 13

a reasonable likelihood of rehabilitation. The two components that courts test are (1) whether, after the commencement of the case, the debtor continues to experience a negative cash flow or declining asset values; and (2) whether there is any reasonable likelihood that the debtor or some other party will be able to stem the debtor's losses and place the enterprise back on a solid financial footing within a reasonable amount of time.[14]

Here, that test does not balance in Mobile Addiction's favor. Mobile Addiction sold all its stores and is no longer a viable business. Mobile Addiction has burned through all its cash and has no income. It hasn't paid employees for post-petition wages, hasn't paid employment taxes, and hasn't paid landlords post-petition. Mobile Addiction's counsel is seeking to withdraw because it appears unlikely Mobile Addiction can pay the law firm. Mobile Addiction has no equity in its few remaining assets. In short, Mobile Addiction has no income but its administrative expenses continue to grow.

---

[14] *In re Western States, Inc.*, No. 17-20041, 2018 Bankr. LEXIS 247, at *13 (Bankr. D. Wyo. Jan. 30, 2018) (citations omitted).

Courts in this District have previously granted motions to dismiss or convert in analogous situations in chapter 11. Dismissal has been granted when a hotel was operating at a loss with no evidence that it could be rehabilitated.[15] As this Court noted in *Bentley*, because the statute uses the word "rehabilitation" rather than "reorganization," it "has been interpreted to require something more than a liquidating plan,"[16] pointing to a Collier's section that says "Rehabilitation is not another word for reorganization. Rehabilitation means to reestablish a business. Whereas confirmation of a plan could include a liquidation plan, rehabilitation does not include liquidation."[17]

Mobile Addiction is not operating and has no chance of rehabilitation. Even winding up is no longer reasonable as administrative expenses are growing while it becomes clear that Mobile Addiction's few assets are pledged—double or even triple-pledged—to secured lenders. Under § 1112(b)(4)(A), cause for dismissal exists.

---

[15] *In re Lenexa Hotel, L.P.*, No. 16-22172, 2018 Bankr. LEXIS 515 (Bankr. D. Kan. Feb. 26, 2018).

[16] *In re Bentley*, No. 09-23107, 2012 Bankr. LEXIS 5969 *12 (Bankr. D. Kan. Dec. 26, 2012).

[17] 7 *Collier on Bankruptcy P* ¶ 1112.04 (16th 2023).

## B. Cause exists for failure to file operating reports.

Under § 1112(b)(4)(F), an unexcused failure to report or file required information constitutes cause for dismissal or conversion. Section 704(a)(8)—made applicable in chapter 11 by §§ 1106(a)(1) and 1107(a), and by Bankruptcy Rule 2015(a)(3)—requires a debtor-in-possession to file periodic financial reports. Operating reports and the financial disclosures they contain "are the life-blood of the chapter 11 process and are more than mere busy work.... The reporting requirements provide the primary means for monitoring the debtor's compliance with the Code's requirements, and they serve as a litmus test for a debtor's ability to reorganize. Thus, non-compliance is not a mere technicality."[18] Without the reports, it is impossible for the Court, creditors, and other interested parties to monitor the debtor's operations to determine whether the debtor has—among other things—remained current on post-petition obligations, including taxes and payroll; made improper payments to professionals or pre-petition creditors; or remained current on its monthly insurance premiums.

---

[18] *In re Whetten*, 473 B.R. 380, 383–84 (Bankr. D. Colo. 2012) (citing *Matter of Berryhill*, 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991)).

Habitual noncompliance with reporting requirements calls into question a debtor's ability to effectively reorganize. As the Colorado bankruptcy court has stated: "If a debtor does not fulfill this basic obligation during the chapter 11 case, when it knows it will have to come before the court on any number of occasions, how can the creditors have any confidence that the debtor will timely and accurately report its income and make the required distributions under its plan, when the court and the UST are no longer monitoring the case?"[19] Consequently, the importance of filing monthly operating reports "cannot be over-emphasized."[20] Refusal or inability to provide financial disclosure "sounds the death knell of a chapter 11 case."[21]

Timely filing operating reports is one of a chapter 11 debtor's most important duties—one of the obligations assumed in exchange for the privilege of continuing to run the debtor's business and retaining possession of estate assets. They provide all stakeholders with information they need to gauge the viability of a reorganization. And

---

[19] *Id.* at 384.

[20] *Id.* (citing *Myers v. Myers (In re Myers)*, BAP No. KS-04-054, 2005 Bankr. LEXIS 900, *5 (B.A.P. 10th Cir. May 25, 2005)).

[21] *In re Tornheim*, 181 B.R. 161, 164 (Bankr. S.D.N.Y. 1995).

belated compliance does not satisfactorily excuse a debtor's failure to satisfy its duties in chapter 11. "Filing catch-up reports is akin to locking the barn doors after the horses have already gotten out."[22]

Here, Mobile Addiction is delinquent as it has not filed monthly operating reports for January or February, the only two months due so far. At each stage so far, additional financial information in this case has only revealed more bad news.

### C. Cause is established, but debtor has no rebuttal.

The Code includes a statutory mechanism to rebut a finding of cause. Once cause has been established, the burden shifts to the debtor, who must identify unusual circumstances showing conversion or dismissal is not in the best interests of creditors and the estate, and establish that:

(A) there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time, and

(B) the grounds for converting or dismissing the case include an act or omission of the debtor other than substantial or continuing

---

[22] *In re Whetten*, 473 B.R. at 383 (citing *In re Landmark Atl. Hess Farm, LLC*, 448 B.R. 707, 716–17 (Bankr. D. Md. 2011)); *In re Woodale Props., Ltd. v. American Chartered Bank*, 2017 U.S. Dist. LEXIS 26538 *16 (N.D. Ill. Feb. 24, 2017) (noting bankruptcy court's rejection of debtor's offer to bring reports up to date and assertion that "a six-month-old monthly operating report is an insult to the bankruptcy system").

loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation—

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court.[23]

In this case, Mobile Addiction cannot show that there is a reasonable likelihood that a plan will be confirmed within a reasonable time or that there is a reasonable justification for any of the issues that will be cured within a reasonable period of time. And any such justification does not even apply to continuing loss to the estate. Cause exists, and Mobile Addiction cannot show anything to support a rebuttal.

### D. Dismissal is the appropriate remedy.

If the Court finds cause exists, then next it must determine whether the case should be converted to chapter 7 or dismissed, whatever is in the best interests of creditors and the estate. The Code does not define "best interests" in this context, but the standard implies

---

[23] 11 U.S.C. § 1112(b)(2).

balancing interests in a case-by-case analysis.[24] Ultimately, it is a matter for sound judicial discretion.[25]

Dismissal is the most appropriate option here. Mobile Addiction's few remaining assets are heavily mortgaged. Conversion would likely saddle a chapter 7 trustee with obligations but no assets to fund them because the assets would likely need to be abandoned to secured creditors. The Court should find dismissal to be the most suitable choice.

## Conclusion

Cause for dismissal or conversion exists as Mobile Addiction has ceased operations and has nothing to liquidate for priority or unsecured creditors—even administrative expenses can't be paid. In addition, Mobile Addiction is delinquent in its financial reporting. For all these reasons, cause exists and the Court should dismiss the case.

> Respectfully submitted,
>
> ILENE J. LASHINSKY,
> UNITED STATES TRUSTEE

---

[24] *In re Neighbors*, No. 11-21003, 2015 Bankr. LEXIS 4308, at *28 (Bankr. D. Kan. Dec. 21, 2015) (citations omitted).

[25] *In re Dooley's Water & Energy Sols., Inc.*, No. 15-10811, 2016 Bankr. LEXIS 1852, at *5 (Bankr. D. Kan. April 27, 2016) (citing *In re Neighbors*, No. 11-21003, 2015 Bankr. LEXIS 4308, at *28.

By: s/Richard A. Kear
Richard A. Kear, #20724
Trial Attorney
301 N. Main St., Suite 1150
Wichita, KS 67202
316-269-6213 (phone)
Richard.Kear@usdoj.gov

# CERTIFICATE OF SERVICE

I certify that on April 2, 2024, a true and correct copy of this **Motion to Dismiss or Convert** was electronically filed with the Court using the CM/ECF system, which sends notification to all parties of interest participating in this case through the CM/ECF system.

By: s/Richard A. Kear